UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 14-cv-66-HRW

PAMELA JOHNSON,                                                                      PLAINTIFF,

v.    REPLY TO RESPONSE TO PLAINTIFF'S MOTION FOR
                        SUMMARY JUDGMENT

THE FLORISTS' MUTUAL INSURANCE
COMPANY d/b/a HORTICA,                                                         DEFENDANT.

** ** ** ** ** ** ** ** ** **

Comes now the Plaintiff Pamela Johnson, by counsel, and for her Reply to the Response to her Motion for Summary Judgment herein, states as follows:

The arguments advanced by Hortica in its combined Reply/Response make it clear that the Plaintiff is entitled to summary disposition on the issue of her entitlement to underinsured motorists coverage under the Hortica Policy.  Hortica even attempts to advise Johnson as to what she, or her husband, "should have done" to better secure coverage in an attempt to distract from the policy language affording her coverage. Summary judgment to the Plaintiff should be granted.

The Defendant Hortica issued a commercial insurance policy to Johnson's Nursery, Inc./Johnson's Garden Center and Gifts/Pam's Primitives that was in full force and effect on the date of the loss herein. Listed on the schedule of vehicles in the declaration of the policy is a 2006 Ford F-350 vehicle, a 1997 Chevrolet 3500, and a 1991 Chevrolet 3500. (Hortica Policy at stamped page 5).  The policy contains an endorsement relating to the definition of who would be an insured under the policy, which specifically

1

lists the Plaintiff, Pam Johnson, under a form titled "DRIVE OTHER CAR COVERAGE – BROADENED COVERAGE FOR NAMED INDIVIDUALS." This endorsement extends various coverages under the policy including underinsured motorist coverage to the listed individuals, and specifically Pam Johnson. Hortica charged a separate premium for that coverage for those individuals. Id at 17.

    A.    THE EXCLUSION MUST BE INTERPRETED TO PROVIDE UNDERINSURED COVERAGE FOR PAMELA JOHNSON

Under an exclusion to the "Broadened Coverage" endorsement titled "Drive Other Car Coverage," Hortica attempts to take away what it charged a premium to provide by setting forth an exclusion to the definition of an insured for underinsured motorist benefits. This exclusion states as follows:

> Any individual named in the schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:
> Any "auto" owned by that individual or by any "family member."

Id at 18.

The policy defines the word 'you' as "the named insured shown in the Declarations." Id. at 19. Hortica contends, incorrectly under Kentucky law, that because a Court in West Virginia or South Carolina may have found this provision enforceable in that state, they are entitled to a dismissal of this action. The proper inquiry under Kentucky law is the ambiguity of the provision in question. The mere wording would seem to obviate further inquiry, but certainly a split of decisions would no doubt establish same. Kentucky law requires:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that **exclusions are to be narrowly interpreted and all questions resolved in favor of the insured**. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. **Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured.** And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

Eyler v. Nationwide Mut. Fire Ins. Co., 824 S.W.2d 855, 859–60 (Ky.1992), (emphasis added). Such canons are to be used "when the language of the insurance contract is **ambiguous or self-contradictory**." Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co., 113 F.3d 629, 636 (6th Cir.1997), (emphasis added). "[A]mbiguous language must be liberally construed so as to resolve all doubts in favor of the insured." Bituminous Casualty Corp. v. Kenway Contracting, Inc., 240 S.W.3d 633, 638 (Ky. 2007). "[E]xclusions in insurance policies should be narrowly construed as to effectuate insurance coverage." Aetna Casualty & Surety Co. v. Commonwealth, 179 S.W.3d 830, 840 (Ky. 2005).

The recitations of Hortica in the most recent filing **establish** that the exclusionary language is ambiguous. Hortica argues that a holding in a South Carolina case reaches a determination of this exclusionary clause language inconsistent from the conclusion of the United States Court of Appeals from the 10th Circuit. What Hortica has proven is that Judges from two different areas of the country have reached different conclusions regarding the construction of the same clause. This is the definition of an ambiguity under by Kentucky law. Where a clause is susceptible of two meanings it is ambiguous.

The new arguments advanced by Hortica are most telling.  It relies upon a case from the US District Court in Western Kentucky that was never called upon to analyze this provision as supporting authority for its provision. The clause was not addressed and this does not give approval to Hortica. Next, Hortica resorts to a lower level court in South Carolina for support.  South Carolina is good to visit, and great for golf, but its Court opinions are not binding on Kentucky, the Sixth Circuit, or this Honorable Court. This would be especially true for a case that does not even arise from the state's Supreme Court. This South Carolina case, <u>Zurich American Insurance Company v. Tolbert</u>, 662 S.E. 2d 606, 808 (S.C. App. 2008), since its rendition in 2008 **has not** been cited as authoritative by <u>any</u> other Court in the country. It is in no way authoritative here. Tolbert was not a named or added insured.  Tolbert's name appeared nowhere in the policy in that case.  <u>Id.</u> at 810.  Here, Pam Johnson was specifically added by contract terms to the policy, by name.   This is an obvious and major distinction.

  The lower court in South Carolina concluded that the only "tenable" reading of the clause supported its validity. <u>Id.</u> at 612.  <u>Websters'</u> defines tenable as "capable of being defended against attack or criticism."  This "tenable" determination is not the proper standard for review under Kentucky law.  Obviously, the case was determined under irrelevant substantive South Carolina interpretative law. Same has no bearing on the decision here but to accentuate that a disagreement as to the language exists between reasonable minds, precluding enforcement of the clause.

"In Kentucky, the exclusionary or limiting language in policies of automobile insurance must be clear and unequivocal and such language is to be strictly construed

against the insurance company and in favor of the extension of coverage." <u>Nationwide Mutual Insurance Company v. Hatfield</u>, 122 S.W.3d 36 (Ky. 2003); <u>Louisville Gas and Electric v. American Insurance Company</u>, 412 F.2d 908 (6th Cir. 1969). A plain reading of the exclusion makes absolutely no grammatical sense. The provision declares that those individuals identified are insureds for underinsured motorist coverage, "while "occupying" or while a pedestrian when being struck by any "auto" you don't own." Clearly, Johnson's Nursery, the "you" in the sentence as the named insured, did not own the vehicle that hit Pam Johnson. The exclusion then states, "except: any auto owned by that individual or any "family member." The only subject "except" can modify is the "auto you don't own," in the previous sentence, meaning you cannot be struck by a vehicle owned by the individual making the claim either. In this regard, the provision makes some potential sense. It excludes underinsured coverage in those situations where a Johnson's Nursery vehicle struck the claimant (as you cannot have a claim for liability <u>and</u> underinsurance under the same policy for the same actions) and a vehicle which is owned by the claimant and her family members (again, the same double claim under one policy). Yet, Hortica interprets the language following the colon to somehow modify, apparently, the term "occupying" as found in that provision. Respectfully, the provision is not grammatically structured in such a fashion to reach such a modification of "occupying," and certainly not in a "clear and unequivocal fashion." The provision is simply nonsensical when it uses the word "except" with a colon.

   Even one of the authorities heavily relied upon by Hortica concedes this point as to the language of the clause. In interpreting the Hortica policy provision herein, that

Court stated: "The above quoted provision makes no grammatical sense." Kirkwood v. Motorist's Mutual Insurance Company, 2012 WL 3777026 (Ohio App. 2012) at page 3. (emphasis added). In that case, the Court then rewrote the contract, adding punctuation to try to save the clause. Such a process may be permitted under Ohio law, but is not permitted by Kentucky law. "The court cannot make a new contract for the parties or revise their contract under profession of construing it." State Farm Mutual Automobile Insurance Company v. Hobbs, 268 S.W.2d 420, 422 (Ky. 1954). In interpreting the provisions of an insurance contract, Kentucky does not permit adding to or striking from those provisions. Fowler v. Brotherhood of Railroad Trainmen, 70 S.W.2d 669 (Ky. 1934). A court cannot read into a contract for insurance terms and conditions the policy does not contain. Buck v. United States Aviation Underwriters, Inc., 763 F.2d 224 (6th Cir. 1985).

The language is therefore clearly ambiguous and cannot be used as a basis to exclude Ms. Johnson's claim. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." Lexicon v. Safeco Insurance Company of America, Inc., 436 F.3d 662 (6th Cir. 2006). The differing Court opinions prove this to be true. Where words employed in an insurance contract are susceptible to two or more reasonable interpretations it should be considered ambiguous and the language resolved in a manner most beneficial to the insured. Stamper v. Hyden, 334 S.W.3d 120 (Ky. App. 2011). The insured is to be given the benefit of the doubt where it can proffer a reasonable construction of language contrary to the interpretation of the

6

drafter. Webb v. Kentucky Farm Bureau Insurance Company, 577 S.W.2d 17 (Ky. App. 1978).

Although Hortica has apparently abandoned the cases previously relied upon by them, the cases were not interpreted under Kentucky law, and had difficulties exposed by the prior response of this Plaintiff. The Illinois case referenced by the Defendant did not interpret the same policy language as in the Hortica policy. The West Virginia case spent several paragraphs to explain why that Court disagreed with other interpretations. However, as acknowledged by Hortica, the United States Court of Appeals for the 10th Circuit has found the contested provision herein to be ambiguous, and enforced underinsured motorists coverage. See State Auto Insurance Company v. Clifford, 195 Fed. Appx. 786 (10th Cir. 2006). There, the Tenth Circuit noted that its lower Court "endeavored to parse the policy endorsement, but was left 'struggling to understand which phrases modify which objects and the [endorsement] as a whole.'" Id at 788. (citation omitted). The Court also concluded that "a lack of punctuation throughout the endorsement made it 'difficult to understand where phrases stop and start and to what they pertain.'" Id. "Reading that endorsement's title, language, and the policy declarations page, made it reasonable to conclude that [Johnson] was a named insured for purposes of the UM endorsement." Id. Thus, clearly Johnson's interpretation is reasonable, and the provision of the Hortica policy should be found to be ambiguous, with coverage provided for Johnson's underinsured motorist claim.

The policy provision interpreted by the 10th Circuit was **identical** to the policy provision brought forward here, down to the colon used in the policy. See State Auto

7

<u>Insurance Company v. Clifford</u>, 2005 WL 2210217 (W.D. Okla. 2005). The Court noted, "this 'sentence' defies diagramming. For one thing, it leaves the phrase 'while occupying' dangling without any explanation of what is being occupied. Although the phrase 'while occupying' presumably refers to while occupying a vehicle of some sort, this phrase's lack of an object leaves the reader struggling to understand which phrases modify which objects in the passages as a whole. The absence of commas makes it even more difficult to understand where phrases stop and start and to what they pertain. <u>This general lack of clarity results in at least two plausible interpretations concerning to which vehicle the exception clause pertains</u>." <u>Id</u>. at page 2 (emphasis added).

"Additionally, the meanings of 'that individual' and of 'any family member' are unclear. 'That individual may refer to: (1) the individual occupying which was struck; (2) the previously referenced 'you' (creating other problems); or (3) the individual who owns the car which struck the car the insured was occupying.' The endorsement does not clarify that 'any family member refers to family members of 'that individual,' thus, at least theoretically, 'family member' could refer to anyone in the world because everyone is a member of some family. That result is absurd of course, but is mentioned to illustrate the passage's overall lack of clarity." <u>Id</u>.   There is coverage, "so long as the auto striking [Ms. Johnson] is not owned by [Ms. Johnson] herself or by any of her family members." <u>Id</u> at Footnote 3. This is the interpretation of Johnson in her Motion. The only United States Court of Appeals which has reviewed this provision should take precedence over a lower South Carolina state court.

Regardless, under Kentucky law, an insurance policy is ambiguous when a provision is "reasonably susceptible of more than one meaning." Foster v. Kentucky Housing Corp., 850 F.Supp 558 (E.D. Ky. 1994). The two competing cases establish this fact, despite Plaintiff's insistence that the Tenth Circuit offers the best approach. See also Pedicini v. Life Insurance Company of Alabama, 682 F.3d 522 (6th Cir. 2012). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." Cantrell Supply, Inc. v. Liberty Mutual Insurance Company, 94 S.W.3d 381, 385 (Ky. App. 2002). Where different federal Courts have reached different results this certainly constitutes reasonable and different interpretations. See Pedicini v. Life Insurance Company of Alabama, 682 F.3d at 528.

With the established ambiguity, the construction of the policy most favorable to coverage is required. State Farm Mutual Automobile Insurance Company v. Wilson, 26 Fed. Appx. 490 (6th Cir. 2002). This is especially true when the Court considers exclusionary language in any insurance contract. Scottsdale Insurance Company v. Flowers, 513 F.3d 546 (6th Cir. 2008). "Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly considered so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured." Eyler v. Nationwide Mutual Fire Insurance Co., 824 S.W.2d 855, 859-60 (Ky. 1992).

Further, "[a]n essential tool in deciding whether an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured, is the so-called 'doctrine of reasonable expectations.'" Simon v. Continental Insurance Co., 724

9

S.W.2d 210, 212 (Ky. 1986). The Kentucky Supreme Court recently revisited this doctrine in <u>Bidwell v. Shelter Mutual Insurance Co.</u>, 367 S.W.3d 585, 589 (Ky. 2012), holding that for an insurer such as Hortica to defeat the policyholder's expectations, the coverage limiting language must be "unequivocally conspicuous, plain and clear" <u>Id.</u> at 592. As a named insured, Johnson has an expectation of coverage.

In essence, the interpretation offered by Hortica would make the provision in the contract illusory and a nullity. The making of the provision to be a nullity supports a declaration that it is ambiguous. See, e.g., <u>Home Folks Mobile Homes, Inc. v. Meridian Mutual Insurance Company</u>, 744 S.W.2d 749, 750 (Ky. App. 1987). (endorsement which by terms would never have any effect). By making the provision a nullity, "an ambiguity has arisen simply by virtue of the insurer's inclusion of the endorsement in the policy." <u>Id</u> at 750.

Hortica was challenged in Plaintiff's prior filings to provide this Court a factual circumstance when the purchased coverage for Ms. Johnson <u>would</u> actually be paid under the terms of this exclusion. There has been no reply to the challenge. Under Kentucky law, "when one has bought and paid for an item of insurance coverage, he may reasonably expect it to be provided." <u>Atlantic Mutual Insurance Co. v. Yates</u>, 497 Fed. Appx. 451, 455 (6th Cir. 2012). "We do not accept as a fact that the parties in good faith, intended to bargain for insurance that paid no benefits." <u>Simon v. Continental Insurance Company</u>, 724 S.W.2d at 212. The precise result of Hortica's interpretation here would be a policy which scheduled an extra premium charged to David Johnson and Pam Johnson but would actually never pay <u>any</u> benefits because of the interpretation Hortica

10

places on the exclusion. "An insurance company should not be allowed to collect premiums by stimulating a reasonable expectation of risk protection in the mind of the consumer, and then hide behind a technical definition to snatch away the protection which induced the premium payment." Aetna Casualty and Surety Company v. Commonwealth, 179 S.W.3d 830, 837 (Ky. 2005).

The interpretation of Hortica provides illusory coverage. "The doctrine of illusory coverage, like the doctrine of reasonable expectations operates to qualify the general rule that courts will enforce an insurance contract as written." Sparks v. Trustguard Insurance Co., 389 S.W.3d 121, 128 (Ky. App. 2012). "This interpretation theory rests on the principle that the insurer's argument 'proves too much.' The language if interpreted as proffered by the insurer, essentially denies the insured most if not all of a promised benefit." Id. (citation omitted). This is precisely the effect of the Hortica interpretation of this clause.

Hortica chose to list Pam Johnson on the schedule and took a premium for doing so. As a result, she should be entitled to the coverage in view of the ambiguous attempt at exclusion. Underinsured motorist coverage is personal to the insured and not connected to a particular vehicle. Snodgrass v. State Farm Mutual Automobile Insurance Company, 992 S.W.2d 855, 857 (Ky. App. 1998). Thus, here the attempted exclusion is against public policy as a premium was paid on behalf of Ms. Johnson for the coverage and yet the exclusion language argued by the Defendant would make that coverage a nullity and illusory. There is no reasonable expectation of any insured for a lack of coverage, especially under an endorsement with the title contained here.

A. THE VEHICLE INVOLVED IN THE WRECK WAS A TEMPORARY SUBSTITUTE VEHICLE

The Hortica policy also contains a Kentucky underinsured motorist coverage endorsement that provides underinsured coverage for:

> a. Anyone else "occupying" a covered "auto" <u>or a temporary substitute for a covered "auto</u>." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

Hortica stamped policy at 14. (emphasis added).

Ms. Johnson, by affidavit and in her deposition, has made it clear that the vehicle she was operating at the time of the accident was being used as a temporary substitute for the 1997 Chevrolet 3500 and 1991 Chevrolet 3500 listed on the Schedule of Vehicles on the Hortica policy. There is no contradiction of this testimony. According to Ms. Johnson's affidavit and deposition testimony, these scheduled vehicles were down for repair, and as a result, at the time of the collision she utilized the personal vehicle in the pursuit of her business endeavors. (Dep. of Johnson, pg. 26-27; Affidavit of Plaintiff).

Hortica does not appear to dispute the mechanical condition of the listed vehicles and in fact attaches the difficulties with these vehicles as an Exhibit to their response. Rather, Hortica attempts to indicate that prior use of the vehicle owned by Ms. Johnson for a work related project, or use as replacement vehicle previously, somehow excludes coverage to her. The difficulty for Hortica is that nowhere in their policy does such language exist. Hortica has referred the Court to no such provision. Yet, Hortica contends such prior use fails to meet the word "temporary." Temporary in this context relates to a specific use to replace a broken down vehicle. This is precisely the

12

circumstance here. There is no definition of the word temporary in the policy. There is no provision that excludes coverage for regular use of a vehicle. Therefore, Hortica's attempted inclusion of such terms must fail.

In <u>Chandler v. American Guarantee & Liability Insurance Co.</u>, 2005 WL 2250836, at Page 8 (E.D. Ky. 2005), this Court analyzed a temporary substitute vehicle provision included in an UIM endorsement which is identical to the provision included in the Hortica policy, and found coverage. "The only reasonable interpretation consistent with both the overall purpose of the policy, the UIM endorsement, and the [UIM] statute is that the second sentence of section B(2)(a) of the policy explains what constitutes a temporary substitute vehicle, a phrase otherwise undefined under the endorsement." <u>Chandler</u> at 6-7. The second sentence of section B(2)(a) determines when a temporary substitute vehicle qualifies as a covered auto. <u>Id</u>. That is, a vehicle qualifies as a temporary substitute vehicle under the policy when the regularly covered auto is out of service because of breakdown, repair, servicing, loss, or destruction. <u>Id</u>. The unrebutted testimony of Ms. Johnson meets this definition. Thus, this authority confirms coverage.

Hortica ignores this decision and instead refers this Court to a Georgia Court of Appeals case which does not portend to interpret Kentucky law. Hortica relies upon this decision to assert that prior use of a vehicle to replace a vehicle under repair no longer makes that use temporary. This argument is nothing more than an attempt to back into a "regular use" argument when the Hortica policy does not contain a "regular use" limitation. Often, policies contain exceptions to coverage based upon "regular use" of a non-owned car. This policy does not contain same.

13

A reading of the Georgia case finds it even further inapplicable to the facts of this matter. The case recites that the "truck was not, therefore, a substitute for the insured vehicles." Fulcher v Canal Insurance Co. 208 S.E. 2d 116, 118 (Ga. App. 1974). Clearly, while not used as a substitute, there is no coverage. But, the case has no relevance as it is undisputed that Johnson was using her vehicle as a substitute. Further, Hortica did not limit how many times this could occur in their policy. Frequency of substitution is not an issue, nor is any other use from which a claim does not arise. The only relevant inquiry under the policy is whether Pam Johnson was operating the 2011 Ford Explorer as a temporary substitution for a vehicle covered by Hortica at the time of this accident. Ms. Johnson's prior use of a substitute or even nonuse of a covered vehicle has no relevance under the contract, or Kentucky law. Again, Hortica has selected a case that is not from the state's Supreme Court and has never been cited as authoritative in any court in the United States. At worst there is a genuine issue of material fact, as Hortica's South Carolina case acknowledges. Zurich American Insurance Company v. Tolbert. 662 S.E.2d at 614.

It is undisputed that the 1997 Chevrolet 3500 and 1991 Chevrolet 3500 vehicles listed on the Schedule of Vehicles of the Hortica policy were out of service due to a mechanical breakdown and were in need of repair. (Affidavit of Plaintiff; Dep. of Johnson, pg. 30-31). It is further undisputed that as a result of these vehicles being out of service, Ms. Johnson was utilizing the personal vehicle titled to David Johnson on her business trip. Id. The Plaintiff's operation of the temporary substitute vehicle at the time of the collision was solely for business purposes. Id. As such, the 2011 Ford was a

14

temporary substitute pursuant to the terms of the Hortica policy, and thus, Ms. Johnson is subject to the underinsured coverage of the policy.

CONCLUSION

The Hortica policy provides underinsured coverage to Ms. Johnson as a named insured, and as a user of a temporary substitute vehicle. Only one is necessary, but both apply. She is entitled to summary judgment.

WHEREFORE the Plaintiff prays for appropriate orders of the Court.

MARTIN & VINCENT PSC

/s/John F. Vincent
John F. Vincent
Andrew K. Wheeler
431 Sixteenth Street
P.O. Box 2528
Ashland, KY 41105-2528
(t) 606/329-8338
(f) 606/325-8199

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2015, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:

Gregory L. Monge
VanAntwerp Monge Jones
Edwards & McCann LLC
1554 Winchester Avenue Fifth Floor
P.O. Box 1111
Ashland, KY  41105-1111
E-mail: gmonge@vmje.com
Counsel for Defendant

This 4th day of March, 2015.

/s/John F. Vincent

15