UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 14-66-HRW

PAMELA JOHNSON,                                                    PLAINTIFF,

v.              **MEMORANDUM OPINION AND ORDER**

THE FLORISTS' MUTUAL INSURANCE
COMPANY d/b/a HORTICA,,                                    DEFENDANT.

        This matter is before the Court upon the parties' cross Motions for Summary Judgment

[Docket Nos. 17 and 18]. The motions have been fully briefed by the parties [Docket Nos. 17-1,

18-1, 19, 22, 23 and 24]. For the reasons set forth herein, the Court finds that Defendant is

entitled to judgement as a matter of law.

                                        I.

        On November 3, 2012, Plaintiff Pamela Johnson was involved in a motor vehicle

accident on State Route 73 in Rush, in Scioto County, Ohio. The vehicle she was driving, a 2011

Ford Expedition, was struck on the front driver's side by a vehicle operated by Michael Newman.

The impact crushed her vehicle, pinning her right leg inside. The passenger in Newman's

vehicle was killed. Newman, who was driving under the influence of alcohol at the time of the

accident, was charged and convicted.

        Plaintiff suffered significant injuries as a result of the accident, including fractures of the

transverse process at L/1 and L/2 on the left side, and an extensive injury to her right ankle. Her

ankle was dislocated and sustained an open fracture near the joint, with her foot dislocated and

rotated ninety degrees in respect to the tibia and fibula. Multiple displaced fracture fragments

were present. She required an extensive surgical procedure with stabilization required outside the leg. After surgery, she was required to have a hospital stay and undergo inpatient rehabilitation. She was confined to a wheelchair for several months, then progressed to a walker and continues to have difficulty ambulating.

At the time of the accident, Plaintiff was on a business trip on behalf of her gift and home decor shop, Pam's Primitives. [Deposition of Pamela Johnson, Docket No. 16., pg. 6, l. 9 and pg. 8, l. 9-20]. The day prior to the accident, she had traveled to the Columbus Marketplace, in Columbus, Ohio, for the purpose of buying merchandise for Pam's Primitive's. *Id.* She explained that the Marketplace was "having a sample sale....you can purchase things there and take it home." *Id.* at pg. 8, l. 21-24 and pg. 9, l. 1. To that end, she had hauled a 16-foot trailer. *Id.* at pg. 10, l. 1. After spending a day at the Marketplace she stayed overnight in Columbus. The next day, she returned to the Marketplace, loaded the trailer with merchandise, and left for Ashland, Kentucky. *Id.* at pg. 11, l. 9-20].

The 2011 Ford Expedition she was driving was titled in the name of her husband, David Johnson. It was bought to be used by Johnson's Nursery and Pam's Primitives[1] in December of 2011 for business purposes. [Affidavit of Pamela Johnson, Docket No. 11-1, ¶11].

---

[1]Johnson's Nursery is a Kentucky corporation duly authorized to conduct business within the Commonwealth of Kentucky. In addition to its namesake business, the company also operates the businesses known as Johnson's Garden Center and Gifts, and Pam's Primitives under its corporate blanket. The sole officer of the corporation is Plaintiff's husband, David Johnson. Plaintiff is an employee of the corporation. [Affidavit of Pamela Johnson, Docket No. 11-1, ¶12].

As result of the accident, Plaintiff incurred substantial medical expenses. These expenses exceeded the amount of insurance coverage available from Newman. After settled her claim with him for the policy limits of his applicable coverage, she asserted a claim against Encompass Insurance Company, the underinsurance carrier of the vehicle she was driving, her husband's 2011 Ford Expedition, and recovered all available coverage from that source.

Plaintiff then sought underisured coverage from a policy of insurance issued by the Defendant The Florists' Mutual Insurance Company d/b/a Hortica ("Hortica"). Hortica provided business/auto coverage to Johnson's Nursery, Inc. and Johnson's Garden Center & Gifts/Pam's Primitives under Policy No. FMA-008128 to cover losses during a period between September 2, 2012, and September 2, 2013. The policy was negotiated for, bargained for and obtained in Ashland, Boyd County, Kentucky within the Eastern District of Kentucky. There is no dispute that the policy was in full force and effect at the time of the accident.

The declaration page provides underisured motorist benefits for motor vehicles, with a single limit of $ 1,000,000. Listed on the Schedule of vehicles covered are a 2006 Ford F-350 pickup truck, a 1997 Chevrolet 3500, which Plaintiff describes as a "stake truck" (whatever that is) and a 1991 Chevrolet 3500, which she describes as "small dump truck". [Docket No. 17-4, pg. 5 and Docket No. 16, pg. 29, l. 1 and 4].

Of the three vehicles identified on the policy, only the two older models, the 1997 and 1991 Chevrolets, were used to pull a trailer. [Docket No. 16, pg. 20, l. 8-11]. Whether either has a permanent trailer hitch, or merely a temporary one, is unclear. The newer vehicle, the 2006 Ford F-350, was not equipped with a trailer hitch and, according to Plaintiff, had never been used to haul a trailer. In fact, she testified that this particular vehicle was used exclusively for

3

landscaping and not for Pam's Primitives. *Id.* at pg. 27, l. 16-23.

Notably absent from the list of covered vehicles, is the 2011 Ford Expedition Plaintiff

was driving at the time of the accident.  Although  purchased with business money, used

regularly in the business, expensed by it and used on numerous occasions for the same purpose

for which it was being used at the time of the accident it was not identified on the Hortica

Insurance Policy.  *Id.* at pg. 33-34.

As to coverage, the policy generally provides:

> A. Coverage
> 1. We will pay all sums the "insured" is legally entitled to recover
> as compensatory damages from the owner or driver of an
> "underisured motor vehicle".
>
> B. Who is An Insured
> 1. ...
> 2. A partnership, limited liability company, corporation or any
> other form of organization, then the following are "insureds":
> a. Anyone "occupying" a covered "auto" or a temporary substitute
> for a covered "auto". The covered "auto" must be out of service
> because of its breakdown, repair, servicing, "loss" or destruction....

[Docket No. 17-4, pg. 13-14].

Regarding underinsurance coverage, the policy provides as follows:

> **B. Who Is An Insured**
> If the Named Insured is designated in the Declarations as:
> ...
> **2.** A partnership, limited liability company, corporation or any
> other form of organization, then the following are "insureds":
> **a.** Anyone "occupying" a covered "auto" or a temporary substitute
> for a covered "auto". The covered "auto" must be out of service
> because of its breakdown, repair, servicing, "loss" or destruction.
> **b.** Anyone for damages he or she is entitled to recover because of
> "bodily injury" sustained by another "insured".

4

*Id.* pg. 14.

Additionally, Endorsement CA99-10-09-02,"Drive Other Car Coverage – Broadened Coverage for Named Individuals", provides in pertinent part:

> **C. Changes In Auto Medical Payments And Uninsured And Underisured Motorists Coverages**
>
> The following is added to **Who Is An Insured:**
> …
> Any individual named in the Schedule and his or her family members are insured while occupying or while a pedestrian when being struck by any auto you don't own except:
> Any auto owned by that individual or by any family member.

*Id.* at 17-18.

At the time of the accident, both the 1997 and the 1991 Chevrolet trucks were out of service and in need of repair. Plaintiff testified that the 1997 stake truck broke down in September 2012 due to a wiring issue and was repaired in December 2012. [Docket No. 16, pg. 30, l. 16-24]. As for the dump truck, its fuel injector system failed in October 2012. It was not repaired until April 2013. *Id.*, pg. 31, l. 9-12.   Although not stated explicitly, it is implied that on the day of the accident, the 2006 Ford F-350 was being used at the Nursery.

As the vehicle which she was driving at the time of the accident was not listed on the policy and because it concluded that no coverage existed, Defendant denied Plaintiff's claim. This lawsuit followed. Both parties now seek summary judgment.

## II.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323  (1986). The Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). " 'The mere existence of a scintilla of evidence in support of the  [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  *Taft Broad Co. v. U.S.,* 929 F.2d 240, 248 (6th Cir. 1991).  The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

## III.

Plaintiff asserts two arguments in support of her claim for underinsurance coverage and for summary judgment: first, she claims that the vehicle she was operating at the time of the accident was a "temporary substitute vehicle" within the terms of the policy and, therefore, she is entitled to coverage. Second,  she contends that the language of the policy is ambiguous and, as such, should be construed as extending coverage to her.

The parties concede that Kentucky law governs this case.   With regard to the interpretation of insurance contracts, Kentucky's Supreme Court has stated, in no uncertain terms:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

*Eyler v. Nationwide Mutual Fire Insurance Company*, 824 S.W.2d 855, 859 (Ky. 1992)(citations omitted).

However, these canons of construction are applicable only when the insurance contract is ambiguous or self contradictory.  *Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629, 636 (6th Cir. 1997).  In the absence of a ambiguity, the contract is to be given its plain meaning. *Id.*

## A.

Plaintiff's first argues that the 2011 Ford Explorer she was operating at the time of the

7

accident, was a "temporary substitute automobile" within the parameters of the subject policy and, as such, cannot be excluded from coverage.

The underisured motorist endorsement included in the Hortica policy plainly states in Section B(2)(a), that an insured is defined for underisured motorist purposes as anyone that occupies "a covered 'auto' or a **temporary substitute** for a covered 'auto.'" (emphasis added). The clause goes on to state that the reason for the use of the temporary substitute vehicle must be because of a breakdown, repair, or servicing of the covered auto.

Plaintiff maintains that as the vehicles covered by the policy were either out of service, or, in the case of the 2006 Ford F-350, not ever used for hauling, she was, therefore, using her husband's vehicle, the 2011 Ford Expedition, as a "temporary substitute" vehicle.

Plaintiff's argument is deceptively simple. Yes, the vehicle in question was being used in lieu of the two older trucks and, therefore, could be deemed a "substitute." The policy, however, requires that a vehicle be not simply a "substitute" but a "**temporary** substitute"- to-wit: the vehicle must be a substitute that is temporary. Plaintiff seems to conflate the two terms, which is not how the policy is written.

It is the "temporary" aspect of the substitution which gives this Court pause. In her deposition, Plaintiff stated that she had used the vehicle involved in the accident for the exact same purposes that it was being used for at the time of the accident at least four to six times in 2012. [Docket No. 16, pg. 30]. Indeed, she testified she had used either the 1997 or 1991 Chevrolets for hauling merchandise during the calendar year 2012. *Id.* It would appear, based upon the scant record in this case, that Plaintiff preferred the 2011 model vehicle over those which were well past their first decade. That is understandable.

8

Moreover, these trucks had been out of service for more than month or two before the accident, yet for the **ten months** proceeding the accident, she repeatedly used her husband's car for hauling merchandise when the insured vehicles were available for use. Again, the only conclusion to be drawn is that the 2011 Ford Expedition was her vehicle of choice, regardless of whether the vehicles listed on the policy were out of service or not. This can hardly be described as "temporary" use.

In an effort to bolster Plaintiff's argument, the undersigned has searched hither and yon for what, exactly, "temporary" means in this context: six months? three months? a week? Although there is an abundance of caselaw involving what, and what is not, considered a "substitute" vehicle in this context, courts have not set the parameters for the term "temporary." To the contrary, courts are inclined to give the term its plain meaning. This is consistent with the well established rule that terms in an insurance policy are to be given their plain, natural and obvious meanings without undue interpretation by the court. *See generally, Pierce v. West American Insurance Company*, 655 S.W.2d (Ky. Ap. 1983).

According to the most recent edition of Webster's New Collegiate Dictionary, the accepted definition of "temporary" is "lasting, existing, serving or effective for a time only: not permanent." Plaintiff's own testimony belies her claim that the 2011 Ford Expedition was used "only for a time" and was not consistent, continual or permanent. Rather, the vehicle involved in the accident was **the only** vehicle used to pull the trailer during the entirety of 2012. There seems to be nothing temporary about that.

Plaintiff's testimony is clear - the 2011 Ford Expedition was neither a substitute or temporary. Therefore, it does not qualify for underinsurance coverage as a temporary substitute

automobile.

## B.

Plaintiff's second argument in support of her dispositive motion is that  that the exclusionary language of the Defendant's insurance policy is "ambiguous" and, as such, should be interpreted in favor of coverage.

"[A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. As the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used. *Eyler v. Nationwide Mut. Fire Ins*. Co., 824 S.W.2d 855, 859–60 (Ky.1992).

However, it is axiomatic that such canons are to be used "when the language of the insurance contract is **ambiguous or self-contradictory**." *Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629, 636 (6th Cir.1997), (emphasis added).  In the absence of an ambiguity, the policy is to be read as written; not re-written by this Court.

The provision at issue is contained in the endorsement "Drive Other Car Coverage for Named Individuals"  and provides as follows:

> "Changes in auto medical payments and uninsured and underinsured motorists coverages.
>
> The following is added to Who is An Insured:
> Any individual in the schedule and his or her single 'family members' are 'insured' while 'occupying' or while a pedestrian when being struck by any 'auto' you don't own except:

10

Any 'auto' owned by that individual or by any 'family member'."

In her submissions to the Court, Plaintiff goes to great lengths to read ambiguity into this provision. She breaks apart the sentence into clauses, calling into question the placement of punctuation and the use of pronouns. She cries foul, arguing that, as written, the only circumstance in which Ms. Johnson would ever have underinsured coverage under the policy would be as a passenger in a vehicle owned by yet another third party, or operating the car of a third party. Yet, this is precisely what the coverage provides. There is certainly nothing "nonsensical" about this, as Plaintiff suggests. It is clear that the policy would cover Plaintiff in this instance, had she been a passenger in a vehicle or a pedestrian, provided it was not a vehicle owned by herself or her family members. This was not the case. She was, in fact, in a vehicle owned by a family member - her husband.

The United State District Court for the Western District of Kentucky looked at this very same language and found no ambiguity. In *Drexler v. The Phoenix Ins. Co., State Farm and Zurich American Ins. Co.* (206 WL 58105 (W.D. Ky. 2006) the Plaintiff was a passenger in an automobile owned by a non-family member and the question was whether or not she was a family member under the "Drive Other Car Coverage" of the insurance policy. The Court in making its determination she was covered for underinsurance found:

> However, Ms. Drexler does not claim coverage under the language cited by Northern. Rather, she claims to be insured under the supplemental policy as a "family member" of an "individual" named in that portion of the policy. *See Plaintiff's Response* (DN 27), p. 3-6 (referencing *Drive Other Car Coverage* form). The endorsement clearly states that it "*modifies* insurance provided under ... [the grandparents'] Business Auto Coverage Form." *Drive Other Car Coverage, p. 1 of 2 (emphasis added).* The supplemental coverage also contains a schedule identifying the

11

"named individuals": as well as other information. *See id. at* p. 1 of 3. The schedule includes sections-which were left blank in the case at bar-where information regarding the "name of the individual," the "limit" and "premium" for "liability," "auto medical payments," "uninsured motorists" and "underinsured motorists" and the "comprehensive" and "collateral" "physical damage" was to be supplied. Excluding the premium amount, this information mirrors that contained in the "Supplemental Declarations" page, which identifies both grandparents as covered "individuals."FN8 The schedule itself indicates that "[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." Thus, it is clear that the term "Declarations" refers to the "Supplemental Declarations" page, which already contained the exact information necessary to complete the form. Furthermore, the Supplemental Declarations form indicates that each "named individual" had underinsured coverage pursuant to endorsement number CA99101001. Coverage provided under this endorsement number is found on the pages titled "Drive Other Car Coverage," which include the schedule discussed above Thus, the controlling issue is whether Ms. Drexler is a "family member' of "[a]ny individual named in the Schedule," as prescribed by the relevant policy language. *See Drive Other Car Coverage,* ¶ C. She certainly meets the first part of the definition as a blood relative of her paternal grandparents. She also satisfies the second party. She was a member of the grandparents' "household." As discussed earlier in Phoenix's motion for summary judgment, the Kentucky courts have defined "household" as "living together as a family under the same roof." *See Sutton v. Shelter Mut. Ins. Co.,* 971 S.W.2d 807, 808 (Ky.App.1997). There is no dispute that Ms. Drexler was living at her grandparents' house at the time of the accident. Her parents agreed to name her grandparents as guardians and specifically chose to have Ms. Drexler move in with them because they resided in the school district where she wanted to finish high school. Since Ms. Drexler was covered a "family member" of the named "individual" under her grandparents' supplemental policy, the court will deny Northern's motion for summary judgment on the coverage claim.

*Id.* at 6-7.

In the entire opinion, there is no condemnation of the policy as ambiguous or vague.

Therefore, as the policy and endorsement here are unambiguous, the policy will be given its plain meaning. There is nothing different about the Hortica policy or the facts of this case that would require a different conclusion by this Court.  Plaintiff  was operating a vehicle that was not listed on the Hortica policy, was owned by a family member, was not a temporary substitute auto and, therefore, was not covered under the terms of the policy.

IV.

Based upon the explicit language of the insurance policy at issue and the facts of the case as told by Plaintiff in her deposition, she has no claim for underinsured motorist benefits.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 17] be **SUSTAINED** and Plaintiff's Motion for Summary Judgement [Docket No. 18] be **OVERRULED.**

Dated: 9-28-15

Signed By:
Henry R. Wilholt, Jr.
United States District Judge